JOSEPH E. MORRIS *v.* ROSE E. PHILLIPS.
[No. 10, October Term, 1933.]

*Decided November 17th, 1933.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*J. Purdon Wright,* for the appellant.

*Daniel Ellison,* with whom were *I. B. Terrell* and *Avrum K. Rifman* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

The appellee (plaintiff below) sued the appellant (defendant) in the Superior Court of Baltimore City for money alleged to be due the appellee, growing out of an oral contract of employment of her by the appellant. The case was

removed to the Court of Common Pleas for trial, which resulted in a verdict by the jury in favor of the plaintiff in the sum of $3,754.08, for which a judgment was duly entered. It is from that judgment the appeal is prosecuted.

The declaration is in assumpsit, and contained at the time of the trial two of the common counts and a special count; the common counts being for money received by the defendant for the use of the plaintiff, and for money found to be due from the defendant to the plaintiff on account stated between them. The special count alleged an oral contract of employment in the following terms: "That the defendant, during July, 1926, had entered into a contract with the plaintiff whereby the defendant agreed to employ the plaintiff as buyer of suits, coats, dresses and furs and as manager of personnel and of the business which the defendant, Joseph E. Morris, conducted at No. 304 North Charles Street, in the City of Baltimore, State of Maryland, at a salary of $75.00 per week in addition to 10% of the net profits of coats, suits, dresses and furs sold in the business establishment of the defendant, trading as Joseph E. Morris, No. 304 North Charles Street, City of Baltimore, State of Maryland, the net profits to be computed, determined and paid every six months; that the plaintiff entered the employ of the defendant on or about the last week of July, 1926, and worked faithfully in accordance with the terms of said contract until July 10, 1929, and that net profits were earned on the said items; the plaintiff says that she received during the period that she worked, the sum of $75.00 per week and that she did not receive any of the other money to which she was entitled in accordance with the terms of the contract, although due demand has been made."

There was filed with the declaration an account showing: (1) The total sales, (2) cost of goods sold, (3) gross profits, and (4) the operating expense of the business, which operating expense was divided in half, and one-half deducted from the gross profits, thereby determining the net profits, upon which ten per cent. was calculated, showing the amount due from the defendant to the plaintiff to be $4,246.19.

A brief statement of the facts is all that is required for a proper understanding of the questions upon which we are asked to pass. The defendant, in July, 1926, was conducting a millinery establishment at No. 304 North Charles Street, in the City of Baltimore. Concluding that an enlargement of the business by adding thereto a women's "ready-to-wear" department, in which suits, dresses, coats and furs, and like articles, could be sold, would increase the profits of the business, he discussed with the manager of the millinery department, Miss Nathanson, the question of a proper person to manage the proposed new department, and was told of the appellee, of whom it was stated that she was then employed in a similar department of Bonwit-Teller's establishment in the City of Philadelphia. Shortly thereafter Miss Nathanson communicated with the appellee and informed her of the appellant's need for a manager and buyer of her (the appellee's) qualifications. Whereupon the appellee made several visits to Baltimore in furtherance of an arrangement for employment, and upon the second of these visits was employed by the appellant as buyer for and manager of the new department at a salary of seventy-five dollars per week; and in addition to the weekly salary, it was agreed that she should receive ten per cent. of the net profits of the merchandise bought by the appellee for the Baltimore store and sold in her department, payable at the end of each six months during her employment. The method or manner of ascertaining the net profits, so agreed to be paid, was that from the total sales of her department there should be deducted the cost of the merchandise so sold, the sum thus produced being the gross profit; next, the total expenses of the whole business were to be arrived at, and one-half of the total expenses deducted from the gross profits of her department; the result of these operations being the net profits, upon which net profits the appellee was to receive ten per cent. After the terms of employment were agreed upon, the appellee supervised the remodeling of the store and purchased the merchandise which was to be offered for sale, by visiting New York for that purpose, her activities beginning some time in July

or August of 1926, so that the opening of the new department might he had on September first following, on which said date the department was opened for business. At the end of the first six months' period no statement of the net profits arrived at in the manner agreed upon was furnished by the appellant to the appellee, and nothing was said by her until nearly a year after the opening in respect to the payment of the commission or bonus which represented a portion of the compensation for her services. She then spoke to the appellant and continued at short intervals to request a statement and payments in accordance with the terms of the contract. These requests were disregarded or thrust aside, with suggestions such as that she did not need the money, or that the books were in Harrisburg and the appellant would have the bookkeeper prepare a statement. In 1927 the appellant opened a women's ready-to-wear department in connection with his Harrisburg store, the buying for which department was also entrusted to and made the duty of the appellee. At about this time the appellee's weekly wage was increased from seventy-five dollars to one hundred dollars per week, the extra twenty-five dollars being for the additional work and responsibility occasioned by the addition of the Harrisburg business. The appellee continued in the employment under the conditions stated until July 10th, 1929, at which time she voluntarily left. The contract was in the beginning for a period of six months, after which time either party was at liberty to terminate it.

The appellant demanded a bill of particulars, to which demand the appellee replied that the account filed with the declaration contained the particulars of her claim. To the particulars thus furnished the appellant excepted as being insufficient, which exception was overruled. This action of the court constitutes the first exception in the record. We find no error in this ruling. The particulars of the claim as contained in the account filed with the declaration are amply sufficient, in view of the fact that the appellant was in possession of all the books and accounts from which any further particulars were to be obtained. A defendant is not entitled

to demand information from a plaintiff as to minute details of the claim, where the defendant is in possession and ownership of the papers and accounts from which alone such information and details can be obtained. The declaration and account of the plaintiff informed the defendant of the cause of action and particularized the account as fully as possible without an examination of the books, which, as stated, belonged to and were in possession of the defendant. There can be no question that the seventh count of the declaration, which set forth the terms of the oral contract of employment, apprised the defendant that the plaintiff claimed ten per cent. of the net profits of her department, such net profits to be arrived at and ascertained in a definite manner, and any further information in respect to the details being within the knowledge of the defendant, or he having means of acquiring such knowledge in his possession, he must resort to such means and cannot make demand upon the plaintiff to furnish them.

The second exception is to the granting of the plaintiff's first prayer and overruling the defendant's special exception thereto, and to the refusal of the defendant's first and second prayers. The defendant's first and second prayers are demurrer prayers, asking the court to declare that there is no evidence in the case legally sufficient to entitle the plaintiff to recover, and directing a verdict for the defendant. These prayers were properly refused. There would be no beneficial purpose subserved in setting out at length the testimony on behalf of the plaintiff. Suffice it to say that the record contained abundant evidence upon which, if believed by the jury, they could find a contract of employment such as claimed and testified to by the plaintiff, namely, that she was to be paid, in addition to her weekly wage, ten per cent. of the net profits of her department, to be arrived at in the manner hereinbefore explained. The record discloses that when the case was first ready for trial, and after a demand by the plaintiff upon the defendant to produce the papers and books containing the records appertaining to the business, from which records the net profits were to be deter-

mined, it was found by the court that such an examination, extending as it did over the records for three years, would consume at great length the time of the court and jury. Whereupon the court directed that all of the books of account of both the plaintiff and defendant be referred to one of the standing auditors of the court for examination and statement of account, which would show: First, the aggregate of the selling price of all dresses, suits, coats, and furs sold by the defendant in his business conducted at 304 North Charles Street from September 1st, 1926, to July 10th, 1929; second, the aggregate of the net cost price (less discount actually availed of) of all such articles so sold by the defendant in the same business for the same period; and, third, the aggregate of the expense items paid by the defendant in connection with the conduct of his entire business (including the millinery department) conducted at the same place for the same period. The report and account of the auditor, filed in the proceedings and offered in evidence, shows that the aggregate selling price of the merchandise described was $217,810.09; that the aggregate net cost, less discount actually availed of, was $138,170.25, and, finally, that the aggregate expense items paid by the defendant in connection with the entire business, including the millinery department, for the same period, was $84,198. At the time this report was offered in evidence, objection was made on behalf of the appellant, whereupon the court stated: "Well, now, as I understand it, gentlemen, this tabulation is only as to a ministerial act by the auditor in ascertaining the aggregate of these items that go to make up the three matters investigated. It is not intended, nor do I mean by admitting it to preclude even, the questioning of any of the items that are dealt with in the account; nor does it intend to be a determination by the auditor of any question of fact at issue in the case. It is purely a ministerial act showing the tabulation of this volume of business carried on during the period that is in controversy in this matter, and that shall be the scope of it only, for the purposes of this case, to save us sitting here for weeks going over all the items you will find

the report of the auditor shows, and the question of any issue of fact in the case still being open, and not being determined by the auditor, we will proceed." The record fails to disclose any objection to the items contained in the audit, or any evidence on behalf of the appellant that they do not fully and truthfully state the result of an examination of the books and papers referred to and examined by the auditor. According to the itemized account filed with the declaration, the net profits were alleged to have been $42,461.90, whereas by the statement of account of the auditor the net profits arrived at in the manner provided for by the contract amounted to $37,540.84, ten per cent. of which would amount to $3,754.08, which is the amount for which the jury rendered a verdict in favor of the plaintiff. The work of the auditor in this case was purely ministerial, and was in no manner final or conclusive, either of the parties having full opportunity to show its incorrectness if such was the case. Especially is this true in respect to the appellant, because of his possession of the books and accounts from which the auditor made his report. It is true that the auditor's report does not coincide exactly with the account filed by the plaintiff with her declaration, which account was made up from the best information available at that time to the plaintiff. Upon an examination of the defendant's books by the auditor and a statement of account based thereon, the plaintiff accepted those figures as the basis of her claim, and the defendant failed to show wherein they were wrong or incorrect. Under such circumstances the report is evidence of what an examination of the books would disclose if made in court and, when adopted by the plaintiff and not shown to be incorrect or erroneous in any particular by the defendant, is evidence legally sufficient to support a verdict.

The plaintiff's first prayer is: "If the jury find from the evidence that the plaintiff was employed by the defendant as a buyer of dresses, suits, coats and furs and as manager of the business at 304 North Charles Street, in Baltimore City, and that the defendant agreed to pay her as compensation for her services, in addition to the regular weekly

salary, ten per cent. of the net profits earned on dresses, suits, coats and furs; and if they further find that the net profits were to be ascertained by deducting from the gross profits on said items one-half of the expenses of conducting the entire business, including millinery, at 304 North Charles Street; and if they further find that the plaintiff entered upon and performed her duties and was so employed by the defendant from about August 1, 1926, to July 10, 1929; and if they further find that net profits were earned and that the ten per cent. thereof was not paid to the plaintiff, then the verdict must be for the plaintiff for an amount equivalent to ten per cent. of such net profit, as they may find to have been earned during the above-mentioned period; and the jury may allow, in their discretion, interest on the amount of money which they may find to be owing to the plaintiff from the date when the same became due to the date of trial." This prayer embodied the theory of the plaintiff's case, and if there was evidence supporting the several elements contained in the prayer, the plaintiff was entitled to recover. The special exception alleged that there was no legally sufficient evidence of the facts referred to in the prayer, that it submitted a question of law to the jury, and that it assumed as a fact something which was to be proved. We find no merit in these contentions. The first is disposed of by what we have said in reference to the demurrer prayers. The alleged question of law which is claimed to have been submitted to the jury is that the jury was to find whether or not the plaintiff and defendant entered into an agreement whereby the defendant was to pay the plaintiff ten per cent. of the net profits. The question of whether or not such was the agreement is not a question of law but a question of fact to be determined from the evidence. Neither is there any assumption of fact necessary to be proved. This prayer requires the jury to find from the evidence that the plaintiff was employed by the defendant for the purposes therein set out, and that the defendant agreed to pay her as compensation for her services, in addition to the regular weekly salary, ten per cent. of the net

profits earned on dresses, suits, coats, and furs. They were further required to find that the net profits were to be ascertained in a definite manner; and, further, that the plaintiff entered upon and performed the duties for the length of time stated in the prayer; and if they found that net profits were earned, and that ten per cent. thereof was not paid to the plaintiff, the verdict should be for the plaintiff for an amount equivalent to ten per cent. of such net profits. Every essential element necessary for the plaintiff's recovery is embodied in the prayer, and the record contains evidence supporting each of these elements. There was no error in overruling the special exception and granting the prayer.

The final exception contained in the record is to the court's overruling the appellant's motion to strike out the judgment. There was no error in this ruling. This motion was based upon affidavits that the plaintiff, at the time of the inception of the contract, used her maiden name and led the appellant to believe that she was unmarried, when in fact she was married and, further, that the representation made to the appellant that she had been employed by Bonwit-Teller of Philadelphia at a salary of sixty-five dollars a week was untrue. These matters are wholly immaterial and irrelevant in a case such as presented by this record. The appellant employed the appellee under a contract which was only to be binding upon the parties for a period of six months, after which either party could sever the same at will. The record discloses that the appellee voluntarily left after a service of approximately three years, during which time her weekly wage was increased twenty-five dollars, thereby conclusively demonstrating that her services were acceptable and satisfactory to the appellant. A different case would be presented if shortly after the employment the appellant had discovered that the appellee had misrepresented the fact that she, at the time of the employment, was working for a Philadelphia firm in a similar business, and had been for five years previous thereto, at a weekly wage of sixty-five dollars, and that her duties there were approximately the same as expected of her by the appellant; and

it might very well be that he could have disaffirmed the contract and terminated the employment before the expiration of the first six months thereof. This he did not do, but continued the employment until it was severed by the voluntary action of the appellee, even though, according to the contract as proven, he could have discharged her at will after the first six months. It is perhaps fair to state in this connection that the appellee, in answer to the appellant's motion to strike out the judgment, offered letters showing that her prior employment had been such as represented by her to the appellant. These were not considered by the court in overruling the motion.

*Judgment affirmed, with costs.*